IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Reginaldo Almazan,<br><br>    Petitioner,<br><br>vs.<br><br>State of Arizona, et. al.,<br><br>    Respondents. | No. cv-10-067-TUC-CKJ (CRP)<br><br>**REPORT AND RECOMMENDATION** |

Reginaldo Almazan ("Petitioner"), presently an inmate at the Arizona State Prison Complex in Tucson, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 2, 2010. (Doc. 1). After that Petition was screened and dismissed, Petitioner timely filed an Amended Petition ("Habeas Petition") on July 2, 2010. (Doc. 5). In his Amended Petition, Petitioner raises one claim - ineffective assistance of counsel in violation of his Sixth Amendment rights. (Doc. 5). Petitioner argues his trial counsel failed to call an expert witness to testify as to the unreliability of eyewitness testimony; misidentification was critical to Petitioner's defense. (Doc. 5). Respondents oppose the Habeas Petition, arguing the state court's determination that Petitioner's counsel was not ineffective was neither contrary to nor an unreasonable application of federal law. (Doc. 15). Respondents argue Petitioner failed to demonstrate trial counsel performed deficiently nor did Petitioner show prejudice. (Doc. 15). Petitioner did not file a reply to Respondent's answer. Time for filing a reply has expired.

**I. Factual and Procedural History**

On October 14, 2005, a jury in Pima County Superior Court found Petitioner guilty of three counts of kidnaping, three counts of armed robbery, three counts of aggravated robbery, one count of aggravated assault, one count of theft by controlling stolen property, one count of theft of means of transportation, and burglary in the first degree. (Doc. 15-7, Exhibit G, pp. 3-4)[1]. The charges arose from an incident on December 16, 2004 when Petitioner and two co-defendants violently invaded a home and attempted to ransom one of the victims for money. (Doc. 15-9, Exhibit X, p. 13, Exhibit DD, p. 99). Petitioner was sentenced on November 28, 2005 to presumptive terms of imprisonment for the thirteen counts. (Doc. 15-7, Exhibit H, pp. 8-16). Three sentences were run consecutive and the remaining concurrent. Accounting for his consecutive sentences, Petitioner was sentenced to serve 31.5 years in prison. (Doc. 15-7, Exhibit H, pp. 8-16).

Petitioner timely filed a notice of direct appeal of December 5, 2005 with the Arizona Court of Appeals. (Doc.15-7, Exhibit I, p. 19). Subsequent to filing his direct appeal, Petitioner requested and was granted a stay of that appeal while he pursued his post-conviction relief appeal ("PCR Appeal") in the trial court. (Doc. 15-7, Exhibit J, p. 21, Exhibit K, p. 24).

On August 18, 2006, Petitioner filed his PCR Appeal. (Doc. 15-7, Exhibit L, p. 42). Petitioner did not file a notice of post-conviction relief. In the PCR Appeal, Petitioner argued numerous claims of ineffective assistance of trial counsel. (Doc. 15-7, Exhibit L, p. 42, Exhibit M, p. 49, Exhibit N, p. 74). Included in those claims, Petitioner argued trial counsel was ineffective in violation of his Sixth Amendment rights because she failed to call an expert witness to challenge the lay witness identification evidence. (Doc. 15-7, Exhibit N, pp. 85-92).

---

[1] The Report and Recommendation cites to the pagination of the Court's case management and electronic court filing system (CM/ECF).

The trial court held an evidentiary hearing on trial counsel's alleged deficiencies. (Doc. 15-7, Exhibit P, p. 113, Exhibit Q, p. 116). During the evidentiary hearing, trial counsel testified, in part, as to her reasoning for not calling an expert. (Doc. 15-8, Exhibit R, pp. 2-81). After the evidentiary hearing, and before addressing the merits of Petitioner's PCR Appeal, the state trial court analyzed whether Petitioner's PCR appeal was untimely based on Petitioner's failure to file a notice of post-conviction appeal. (Doc. 15-9, Exhibit U, p. 2, Exhibit V, p. 8, Exhibit W, p. 11, Exhibit X, p. 13). Ultimately the trial court concluded that while the PCR Appeal was untimely, Petitioner relied on a prior acceptance of the PCR Appeal by the Court. (Doc. 15-9, Exhibit X, pp. 13-14). Thus, while the trial court found the PCR Appeal untimely, it also ruled on the merits *in arguendo*. (Doc. 15-9, Exhibit X, pp. 14-15).

Ruling on the PCR Appeal, the trial court denied all of Petitioner's claims including his ineffective assistance of counsel claim for failure to call an expert witness on identification. (Doc. 15-9, Exhibit X, pp. 13-18). The trial court found counsel's performance was not deficient as to the expert witness because trial counsel made a tactical decision to not call the expert. (Doc. 15-9, Exhibit X, pp. 14-15). The trial court noted defense counsel testified at the evidentiary hearing that she only uses an expert in identification issues in instances of prejudice or racial profiling. (Doc. 15-9, Exhibit X, p. 14). As Petitioner and identifying witnesses were from the same racial background, defense counsel did not believe an expert would be helpful. (Doc. 15-9, Exhibit X, p. 15). Further, the trial court noted defense counsel testified that the best way to challenge the identifying witnesses was to cross-examine them on discrepancies in their testimony. (Doc. 15-9, Exhibit X, p. 15). The trial record established that defense counsel did cross-examine identifying witnesses on the lighting at the scene, inconsistencies in the lineup identification, a witness's failure to wear corrective lenses, height discrepancies, and identification based on an earlier meeting. (Doc. 15-9, Exhibit X, p. 15). The trial court further noted defense counsel reiterated these discrepancies in her closing argument and

that concerning the lineup identification, defense counsel had filed a *Desserault* motion to preclude the out of court identification. (Doc. 15-9, Exhibit X, p. 15).

Based on the above evidence, the trial court concluded defense counsel's decision to not call an expert on identification was a strategic choice and was not deficient performance. The trial court further found that even if counsel's performance had been deficient, Petitioner had not shown prejudice. (Doc. 15-9, Exhibit X, p. 15). The trial court noted Petitioner's long-time friend, who was a co-defendant, testified that Petitioner was with him at the crime scene and had participated in the crime. (Doc. 15-9, Exhibit X, p. 15). Thus, any expert identification testimony would have been irrelevant. (Doc. 15-9, Exhibit X, p. 15).

On appeal to the Arizona Court of Appeals, Petitioner successfully moved to consolidate a petition for review of his pending direct appeal with a petition for review of the PCR Appeal. (Doc. 15-9, Exhibit Y, p. 20, Exhibit Z, p. 23). In his appeal, Petitioner again raised his ineffective assistance of counsel claim for failure of trial counsel to call an expert witness on identification. (Doc. 15-9, Exhibit AA, p. 26). The Arizona Court of Appeals denied this claim. (Doc. 15-9, Exhibit DD, p. 98). The appellate court determined the trial court did not err in finding trial counsel was not ineffective. (Doc. 15-9, Exhibit DD, pp. 102-103). The appellate court relied on the "detailed minute entry ruling" of the trial court to support its decision. (Doc. 15-9, Exhibit DD, p. 103).

After the appellate court denied Petitioner's claim, he had 30 days to petition the Arizona Supreme Court for review. *See* Ariz.R.Crim.P. 31.19(a). Petitioner did not seek that review. Petitioner filed the pending Habeas Petition on February 2, 2010. (Doc. 1).

**II. Analysis**

**A. Timeliness**

The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations for state prisoners filing federal habeas petitions. 28 U.S.C. § 2244(d)(1). The statute of limitations begins to run from the latest of: (1) the

date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

In this case, the statute of limitations began to run when Petitioner's direct review became final. The Arizona Court of Appeals denied both Petitioner's direct appeal and his PCR Appeal on November 7, 2008 through his consolidated petition. (Doc. 15-9, Exhibit DD, p. 98). Thus, Petitioner had 30 days, until December 8, 2008, to petition the Arizona Supreme Court for review. Ariz.R.Crim.P. 31.19(a); *Hemmerle v. Schriro*, 495 F.3d 1069, 1073-1074 (9th Cir.2007) (noting direct appeal is final upon expiration of time for seeking further appellate review).[2]

Petitioner did not file a petition for review and his one year limitations period for filing a federal habeas petition under the AEDPA began running the following day on December 9, 2008. This time expired one year later on December 9, 2009. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir.2001) (calculating the one-year AEDPA statute of limitations using the "anniversary method" based on Rule 6(a) of the Federal Rules of Civil Procedure). Petitioner did not file his federal habeas petition until almost two months later on February 2, 2010. (Doc. 1). It, thus, appears the Habeas Petition is

---

[2] The Magistrate Judge notes the clock on Petitioner's 30 days began to run the day after the appellate court denied his appeals. Thus, 30 days from November 7, 2008 is actually December 7, 2008. That day, however, was a Sunday and pursuant to Arizona procedural rules, Petitioner's petition for review would have been due the following business day, Monday, December 8, 2008. *See* Ariz.R.Crim.P.1.3(a).

- 5 -

untimely.[3]

The Government, however, has not argued the Habeas Petition is untimely and a statute of limitations defense is not jurisdictional. District courts are permitted, but not obliged, to *sua sponte* consider the timeliness of a state prisoner's habeas petition. *Day v. McDonough*, 547 U.S. 198, 202, 209-210 (2006). Before a district court can act on its own initiative, however, it must give the parties notice of its intention and give the parties an opportunity to present their positions. *Id*. at 210.

In this case Respondents appear to mistake the time a petitioner has to file a petition for review to the Arizona Supreme Court, 30 days, with the time a petitioner has to file a writ of certiorari to the United States Supreme Court after a petitioner has been denied by the state's highest court, 90 days. (Doc. 15, p. 6). Petitioner only had 30 days as his appeals were denied by the Arizona Court of Appeals and his next step was to petition the Arizona Supreme Court for review. While it appears the Habeas Petition is untimely, the Magistrate Judge has not ordered additional briefing on this issue and will not recommend dismissal on statute of limitations grounds. Rather, the Magistrate Judge will address the merits of Petitioner's claim and, as discussed below, recommend denying the Habeas Petition on the merits.

**B. Exhaustion**

An application for writ of habeas corpus shall not be granted unless: the applicant has exhausted the remedies available in the courts of the State; there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1).

To properly exhaust state remedies, the petitioner must "fairly present" his claims to the state courts in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). Specifically, exhaustion requires that a petitioner either fairly present

---

[3] Statutory tolling would not add any time to Petitioner's clock as the PCR Appeal was filed and adjudicated with the direct appeal. The Magistrate Judge notes the parties have not briefed whether equitable tolling would apply.

- 6 -

his claims to the Arizona Court of Appeals, *Swoopes v. Sublett*, 196 F.3d 1088, 1010 (9th Cir.1999), or show that no state remedies remain available. *Kellotat v. Cupp*, 719 F.2d 1027, 1029 (9th Cir.1983) (citing *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir.1982)). This requirement of exhaustion is designed to give a state the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Picard v. Connor*, 404 U.S. 270, 275 (1971).

In the pending Habeas Petition, Petitioner asserts one ground for relief. (Doc. 5). Citing *Strickland v. Washington*, 466 U.S. 668, 687-694 (1984), Petitioner argues his Sixth Amendment rights were violated due to alleged ineffective assistance of trial counsel. *Id*. Petitioner contends his trial counsel failed to investigate the unreliability of eyewitness testimony by calling an identification expert. *Id*. Petitioner raised this claim in his PCR Appeal to both the state trial court and the Arizona Court of Appeals. (Doc. 15-7, Exhibit N, pp. 85-92; Doc. 15-9, Exhibit AA, p. 26). Both state courts denied Petitioner's claim on the merits. (Doc. 15-9, Exhibit X, pp. 13-18; Doc. 15-9, Exhibit DD, pp. 102-103). Petitioner did not petition the Arizona Supreme Court for review of the appellate court's denial.

Petitioner raised his ineffective assistance of counsel claim to the trial court and then the Arizona Court of Appeals. Petitioner has properly exhausted this claim. The Court will address the merits.

**C. Standard of Review**

Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the State court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established precedent if (1) "the

state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The state court's application of Supreme Court law must be more than incorrect or erroneous; it must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ..." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir.2004) (internal citations omitted).

### D. Analysis of the Merits

Petitioner argues trial counsel was ineffective for failing to investigate the unreliability of the eyewitness testimony by calling an identification expert. (Doc. 5). To prevail on an ineffective assistance of counsel claim, a convicted defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that counsel's performance prejudiced him such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id*. at 694. There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Id*. at 689-90. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

In order to be entitled to relief on Ground One, Petitioner must demonstrate that the state court's decision in denying Petitioner's claim was based on a legal standard contrary to or an unreasonable application of *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented.

Petitioner alleges his trial counsel performed ineffectively by failing to examine the unreliability of eyewitness testimony through an expert. Petitioner argues an expert could have explained to the jury the phases of eyewitness identification, the effects of various psychological factors on each phase, and the contradictions of numerous lay witness identifications – all using empirical research. (Doc. 5., p. 11).

In addressing this claim, the Arizona Court of Appeals determined the trial court did not err in finding trial counsel was not ineffective. (Doc. 15-9, Exhibit DD, pp. 102-103). The appellate court relied on the "detailed minute entry ruling" of the trial court to support its decision. (Doc. 15-9, Exhibit DD, p. 103). This Court, therefore, "looks through" the appellate court's decision to the reasoned analysis of the state trial court to determine if the state courts' decision was contrary to or an unreasonable application of *Strickland*. *Robinson*, 360 F.3d at 1055.

The trial court found counsel's performance was not deficient as to the expert witness because defense counsel made a tactical decision to not call the expert. (Doc. 15-9, Exhibit X, pp. 14-15). The trial court noted defense counsel testified at the evidentiary hearing that she only uses an expert in identification issues in instances of prejudice or racial profiling. (Doc. 15-9, Exhibit X, p. 14). As Petitioner and identifying witnesses were from the same racial background, defense counsel did not believe an expert would be helpful. (Doc. 15-9, Exhibit X, p. 15). Further, the trial court noted defense counsel testified that the best way to challenge the identifying witnesses was to cross-examine them on discrepancies in their testimony. (Doc. 15-9, Exhibit X, p. 15). The trial record established that defense counsel did cross-examine identifying witnesses on the lighting at the scene, inconsistencies in the lineup identification, a witness's failure to wear corrective lenses, height discrepancies, and identification based on an earlier meeting. (Doc. 15-9, Exhibit X, p. 15). The trial court further noted defense counsel reiterated these discrepancies in her closing argument and that concerning the lineup identification, defense counsel had filed a *Desserault* motion to preclude the out of court identification.

(Doc. 15-9, Exhibit X, p. 15).

Based on the above evidence, the trial court concluded defense counsel's decision to not call an expert on identification was a strategic choice and was not deficient performance. The trial court further found that even if counsel's performance had been deficient, Petitioner had not shown prejudice. (Doc. 15-9, Exhibit X, p. 15). The trial court noted Petitioner's long-time friend who was a co-defendant testified that Petitioner was with him at the crime scene and had participated in the crime. (Doc. 15-9, Exhibit X, p. 15). Thus, any expert identification testimony would have been irrelevant. (Doc. 15-9, Exhibit X, p. 15).

Petitioner's trial counsel was not ineffective under the *Strickland* standard. Petitioner has not shown that his trial counsel was deficient nor that there is a reasonable probability that the outcome of his case would have been different.

"In determining whether the defendant received effective assistance of counsel, we 'will neither second-guess counsel's decisions, not apply the fabled twenty-twenty vision of hindsight', but rather, will defer to counsel's sound trial strategy." *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir.2001) (internal citations omitted). "Counsel is entitled to balance limited resources in accord with effective trial tactics and strategies." *Harrington v. Richter*, 131 S.Ct. 770, 779 (2011). "Rare are the situations in which the latitude counsel must have in making tactical decisions will be limited to any one technique or approach." *Id*. at 789. (internal citations and quotations are omitted).

Trial counsel decided to challenge the reliability of eye-witness testimony through cross-examination of the witnesses rather than through calling an identification expert. Trial counsel's decision to discredit witnesses' testimony through vigorous cross-examination rather than using an identification expert was tactical. Further, trial counsel filed pre-trial motions to preclude out of court identification and also reiterated discrepancies in witnesses' testimony during her closing argument. Finally, Petitioner participated in the crimes with a long-time friend who testified at trial that Petitioner was

present. Thus, even if trial counsel had been ineffective, the outcome would not have been different. Petitioner was not prejudiced.

The state courts' decision to deny Petitioner's ineffective assistance claim was not contrary to nor an unreasonable application of *Strickland* nor was it based on an unreasonable determination of the facts in light of the evidence presented during the evidentiary hearing. Petitioner's claim of ineffective assistance of counsel should be denied.

### III. RECOMMENDATION

Based on the foregoing, the Magistrate Judge recommends that the District Court, after its independent review, DENY the Petition for Writ of Habeas Corpus. (Doc. 5).

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: cv-10-067-TUC-CKJ.

Dated this 12th day of August, 2011.

*Charles R. Pyle*
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE